UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STEPHEN ANJORIN,

      Plaintiff,

v.                                                                       Case No. 12-13393
                                                                         HON. AVERN COHN
CITY OF DETROIT, a municipal corporation;
CHESTER LOGAN, Detroit Police Chief;
STEPHEN HODO, Detroit Police Officer;
JASON MURPHY, Detroit Police Officer;
STEVEN RATA, Detroit Police Officer;
MATTHEW NEIHENGEN, Detroit Police Officer;
Detroit Police SGT. PURIFOY;
Detroit Police INV. BANKS;
In their Individual and Official Capacities,

      Defendants.
_____/

## MEMORANDUM AND ORDER

## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 42) AND

## DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT (Doc 40)

### I. INTRODUCTION

This case concerns a claim of excessive use of force by several police officers of

the Detroit Police Department, relating to incidents occurring in December 2010 and

March 2011.  In a seven-count amended complaint (Doc. 28), pro se plaintiff Stephen

Anjorin (Plaintiff) is suing the City of Detroit (the City), as well as former Police Chief

Chester Logan and several Detroit police officers in their individual and official

capacities for:

      Count I:       Gross Negligence
      Count II:     Assault and Battery

Count III:      42 U.S.C. § 1983 Against All Defendants
Count IV:      42 U.S.C. § 1983 Against the City of Detroit
Count V:       Supervisory Liability Against Chester Logan
Count VI:      42 U.S.C. § 1983, Conspiracy to Violate Plaintiff's Civil Rights
Count VII:     False Arrest

Now before the Court are Plaintiff's Motion for Partial Summary Judgment (Doc. 40)[1] and Defendants' Motion for Summary Judgment.  (Doc. 42)  For the reasons that follow, Defendants' motion is GRANTED and Plaintiff's motion is DENIED.

## II. BACKGROUND

At the outset, it must be noted that neither party has submitted a statement of material facts in support of their respective positions, nor is there a joint statement of material facts.  The facts below are as detailed in the parties' briefs, as supported by any exhibits provided.

### A. December 23, 2010

According to Plaintiff, on December 23, 2010, Plaintiff arrived at his home to find a neighbor, Debra Brown, in his apartment.  Plaintiff called 911 for help, saying that there was a break-in and entry.  When police officers arrived, the unnamed officers told Plaintiff that they were there to investigate a report that Plaintiff was in possession of a gun.  Plaintiff says that the officers asked Plaintiff to surrender the gun or be arrested. When Plaintiff denied knowledge of any gun, he says that the officers handcuffed him, battered and assaulted him by kicking him, hitting him in the bicep, twisting his arms, and placing him under a chokehold, and put him in the patrol vehicle for 47 minutes.

According to Defendants, police officers Rata and Neihengen were responding to

---

[1]      Plaintiff's Motion for Partial Summary Judgment does not state clearly on which issues he seeks summary judgment; instead, Plaintiff argues that the Court should grant him summary judgment on all of his claims.  For this reason, the Court will construe Plaintiff's papers as a cross motion for summary judgment.

a landlord-tenant complaint.   Plaintiff, the landlord, stated that he would not restore power to Ms. Brown's rental unit until she paid her back rent.   Defendants state that Plaintiff was handcuffed and placed briefly into the patrol vehicle.   Defendants state that after this incident, Plaintiff filed a complaint with the Office of the Chief investigator.   The matter was investigated, the officers were exonerated, and the file was closed.

### B. March 11, 2011

Similarly, Plaintiff says that on March 11, 2011, he reported "the same suspect"— apparently Ms. Brown—for break-in and entry.   He says that Detroit police officers knocked on Plaintiff's door, told him he was under arrest, handcuffed him, and hit him on the left foot, causing him to go down.

According to Defendants, police officers Hodo and Murphy were responding to a landlord-tenant dispute involving a gun.   Defendants state that Plaintiff explained that he was attempting to evict Ms. Brown, and that the officers stood by until Ms. Brown removed her belongings from the apartment.   Defendants state that after this incident, Plaintiff filed a complaint with the Office of the Chief investigator.   The matter was investigated, the officers were exonerated, and the file was closed.

### C. Evidence Presented

In support of Plaintiff's version of facts, he provides a sworn statement by Alonzo Oliver, stating that on an unspecified date, police officers "rough handled and handcuffed" Plaintiff, kicked him a couple times, and put him in the back of the patrol vehicle for an unspecified amount of time.   (Doc. 40 at 27)   A second affidavit by Isiai Okoh states that Plaintiff could not live in his house because he was "delusional that one Detroit Police officer will come and kidnap or arrest him in the middle of the night."

(Doc. 40 at 28)  It does not appear that either affiant has been deposed.  Plaintiff has also submitted medical records from January 22, 2011, when Plaintiff reported to Henry Ford Hospital for depression.  These records state that Plaintiff was "harassed" by police officers and placed in a patrol vehicle for about an hour.  (Doc. 40 at 32)

Defendants state that Plaintiff was not arrested, assaulted, battered, or improperly detained on either occasion.  In support of Defendants' version of the facts, Defendants have submitted a report from the December 2010 incident, and Plaintiff's citizen complaints from both incidents, which corroborate Defendants' version of events. (Doc. 42, Ex. A, B)

### III. LEGAL STANDARD

The summary judgment standard of review under Fed. R. Civ. P. 56 is well known and not repeated here.  Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact drawing "all justifiable inferences in the light most favorable to the non-moving party."  *Hager v. Pike Cnty. Bd. of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002).

### IV. DISCUSSION

#### A. Plaintiff's Claims Under § 1983

##### 1. Official Capacity Claims and Claims Against the City of Detroit

A government employee can be sued in his or her personal or official capacity or both, which determines the person or entity the plaintiff is ultimately holding responsible. Whereas "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. . . . [o]fficial-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' "  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting

*Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)). Here, Plaintiff asserts claims against the City as well as against several police officers in their official capacity.   Because both claims ultimately seek to impose liability on the City, they must satisfy the pleading requirements under *Monell*.

In distinguishing personal liability from official-capacity actions under *Monell*, the Supreme Court has explained that "[m]ore is required in an official-capacity action [because] a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation[.]   [T]hus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."   *Id.* at 166 (citations and internal quotations omitted).

Here, Plaintiff's Amended Complaint alleges only in the most general terms that the City maintained a policy or custom that resulted in the deprivation of Plaintiff's constitutional rights.   Although the Amended Complaint repeatedly refers to the "custom, pattern, and/or practice" of the City, Plaintiff has not identified any such policy that might have caused the injuries of which he complains.   Finally, discovery is now closed, and Plaintiff has presented no evidence of any custom, policy, or practice that led to the deprivation of his constitutional rights.   Because Plaintiff's claims against the City and against the individual police officers in their official capacities fail under *Monell*, these claims fail to present a genuine issue of material fact.

### 2. Personal Capacity Claims Against the Individual Police Officers

Defendants next argue that the individual police officers named in their personal capacities are entitled to qualified immunity.   The doctrine of qualified immunity shields governmental officials performing discretionary functions "for liability for civil damages

5

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has explained that "the qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citations and internal quotations omitted).

Here, Defendants argue that Plaintiff cannot show that any of his constitutional rights were violated by the police officers' actions. Based on the record, Defendants are correct in stating that Plaintiff was never arrested. Although the record reflects that the police officers placed Plaintiff in a patrol vehicle for less than an hour, he was later released without incident.

Here, Plaintiff cannot demonstrate that he was subjected to any illegal search or seizure; rather, Plaintiff's complaint asserts an excessive force claim. However, other than Plaintiff's own self-serving testimony, Plaintiff provides no evidence sufficient to raise a genuine issue of material fact as to the excessiveness of the police officers' conduct. At most, the affidavit by Mr. Oliver states that, on an unspecified date, Plaintiff was "rough handled and handcuffed" and "kicked a couple times" before being placed in the patrol vehicle. Even if this affidavit is construed as describing the December 23, 2010, incident in which Plaintiff was placed in the patrol vehicle, what it says is contradicted by Plaintiff's own citizen complaint, which merely states that Plaintiff was placed in handcuffs and detained for 47 minutes, with no mention of rough handling, kicking, or the use of a choke hold. (See Doc. 42, Ex. A at 6) Other affidavits, which speak to Plaintiff's depression and fear of being arrested, are irrelevant.

6

Based on the available evidence, Plaintiff cannot raise a genuine issue as to whether the police officers were "plainly incompetent" or knowingly violated the law. For this reason, Plaintiff has failed to demonstrate that the police officers' conduct violated Plaintiff's clearly established statutory or constitutional rights, of which a reasonable person would have known. The police officers therefore enjoy qualified immunity.

## B. Plaintiff's State Law Tort Claims

### 1. Tort Claims Against the City of Detroit

The Government Tort Liability Act (GTLA) provides: "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." M.C.L. § 691.1407(1). Under this provision, governmental agencies are immune from tort liability so long as they are engaged in the "exercise or discharge of a governmental function." A "governmental function" is "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(f). This includes "[t]he authority of the city's police officers to 'pursue, arrest and detain' those suspected of violating the laws of Michigan." *Payton v. City of Detroit*, 211 Mich. App. 375, 392 (1995).

To maintain an action against a government agency, a plaintiff must plead facts in avoidance of immunity. *McCann v. Michigan*, 398 Mich. 65, 77 (1976). Generally, a plaintiff pleads facts in avoidance of governmental immunity by stating a claim that fits within a statutory exception or by pleading facts that demonstrate the alleged tort occurred during the exercise or discharge of a nongovernmental or proprietary function. This applies to claims based on vicarious liability as well: "A governmental agency can

7

be held vicariously liable only when its officer, employee, or agent, acting during the

course of employment and within the scope of authority, commits a tort while engaged

in an activity which is nongovernmental or proprietary, or which falls within a statutory

exception." *Ross v. Consumers Power Co.*, 420 Mich 567, 625 (1984).

Here, Plaintiff does not argue that his claim falls within one of the statutory

exceptions.  Further, based on the available evidence, Plaintiff's claimed injuries arose

during the course of a police investigation of two separate tenant-landlord disputes, the

second of which involved a gun.  (See Doc 42, Ex. A at 1, Ex. B at 2)  Although the facts

are somewhat unclear, the record indisputably shows that the police officers were

engaged in activities related to the municipal police functions—particularly the

investigation of persons suspected of having committed a crime and the determination

of which suspects, if any, should be arrested and which should be released.  Plaintiff

cannot demonstrate that the police officers were engaged in a nongovernmental

function; accordingly, the City is immune under the GTLA from Plaintiff's state law tort

claims.

### 2. Supervisory Liability Claim Against Police Chief Logan

Defendants next argue that former Police Chief Logan is immune from state law

claims under the GTLA, which provides: "A judge, legislator and the elective or highest

appointive executive official of all levels of government are immune from tort liability for

injuries to persons or damages to property if he or she is acting within the scope of his

or her judicial, legislative or executive authority."  M.C.L. 691.1407(5).

Here, the only specific allegation against Police Chief Logan is under Count V,

that he failed to appropriately supervise the Detroit Police Department.  However, as

8

Defendants point out, Police Chief Logan's acts relating to the training and supervision of the police department were squarely within the scope of his authority as Chief of Police. "Scope of authority" has been described as "[t]he reasonable power that an agent has been delegated or might foreseeably be delegated in caring out the principal's business." *Backus v. Kauffman*, 238 Mich. App. 402, 409 (1999). Further, there is no allegation that Police Chief Logan had any direct involvement with the incidents in December 2010 or March 2011. To the extent Police Chief Logan supervised and trained the police officers, he was acting within the scope of his authority as Chief of Police and is immune from state law claims.

### 3. Gross Negligence Claims Against the Individual Police Officers

Next, Defendants argue that the individually named police officers are entitled to governmental immunity under the GTLA with respect to Plaintiff's gross negligence, assault and battery, and false arrest claims. The Act provides as follows:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

9

M.C.L. § 691.1407(2).  Therefore, unless the individual police officers meet the above three requirements, they are not entitled to governmental immunity.

The GTLA contains an exception for injuries resulting from gross negligence, defined as conduct that is "so reckless as to demonstrate a substantial lack of concern for whether an injury results."  M.C.L. § 691.1407(8)(a).  The Michigan Court of Appeals has explained that under the GTLA, gross negligence "suggests . . . almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risk."  *Tarlea v Crabtree*, 263 Mich. App. 80, 90 (2004).

Here, Plaintiff's fails to raise a material issue as to whether the individual police officers acted with gross negligence.  As noted above, Plaintiff offers little more than his own self-serving testimony and an ambiguous affidavit relating to the police officers' conduct, both of which are contradicted by Plaintiff's own citizen complaint.  Plaintiff raises no genuine issue as to whether the police officers exhibited gross negligence under the GTLA.

### 4. Intentional Tort Claims Against the Individual Police officers

With regard to Plaintiff's assault and battery and false arrest claims, the individual police officers generally enjoy governmental immunity from these claims as well.  In *Ross v. Consumers Power Co.*, 420 Mich. 567 (1984), the Michigan Supreme Court explained the requirements for establishing immunity for intentional torts "(1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were

10

discretionary, rather than ministerial, in nature." *Odom v. Wayne Cnty.*, 482 Mich. 459, 461 (2008). Defendant police officers meet these requirements.

First, the allegedly tortious acts must be taken "during the course of ... employment," and the employee must be "acting, or reasonably believe[d] [he was] acting, within the scope of [his] authority[.]" *Id.* at 473 (quoting *Ross*, 420 Mich. at 633). This requirement "protects a governmental employee who reasonably believes that he was authorized to take certain actions." *Id.* Here, the is no question that, in responding to the landlord-tenant disputes in December 2010 and March 2011, the police officers were acting within the scope of their authority.

Next, Defendants must show that the individual police officers' actions were undertaken in good faith. Michigan courts have described the lack of good faith as "malicious intent, capricious action or corrupt conduct" or "willful and corrupt misconduct." *Id.* at 474 (footnotes and citations omitted). "Thus, the proponent of individual immunity must establish that he acted without malice." *Id.* at 475. Here, Defendants argue that the individual police officers were acting in good faith in performing their job duties. These arguments are persuasive. As noted above, Plaintiff has raised no material facts as to whether the individual police officers acted with malice sufficient to overcome Defendants' claim of immunity, and Plaintiff's self-serving account and his ambiguous supporting affidavit are contradicted by his own citizen complaint.

Finally, the individual police officers' actions must be discretionary, rather than ministerial, in nature. Michigan courts have explained that while ministerial acts "constitute merely an obedience to orders or the performance of a duty in which the

11

individual has little or no choice," discretionary acts "require personal deliberation, decision and judgment."  *Id.* at 476 (footnotes and citations omitted).  In the context of discretionary police enforcement, "an officer must use his judgment to determine whether there is reasonable suspicion to investigate or probable cause to arrest and to determine the amount of force necessary to effectuate an arrest."  *Id.*  Here, in responding to the landlord-complaint, placing Plaintiff in handcuffs, and detaining him in the patrol vehicle for 47 minutes, the individual police officers were, without question, performing discretionary acts.

Therefore, Defendants have established all of the requisite elements for governmental immunity from Plaintiff's intentional tort claims.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment has been granted.  This case is DISMISSED.

SO ORDERED.

s/Avern Cohn
UNITED STATES DISTRICT JUDGE

DATED:  March 31, 2015

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 31, 2015, by electronic and/or ordinary mail.

s/Sakne Chami
Case Manager, (313) 234-5160

12